**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BARTLEY MULLEN, individually and on behalf of all others similarly situated, | ) ) | No. 2:20-cv-01530-RJC |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | Judge Robert J. Colville |
| vs. | ) ) | |
| CONCORD HOSPITALITY ENTERPRISES COMPANY, LLC, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is the Motion to Dismiss (ECF No. 10) filed by Defendant Concord Hospitality Enterprises Company, LLC ("Concord"). Concord asserts that the Class Action Complaint for Declaratory and Injunctive Relief ("Complaint") (ECF No. 1) filed by Plaintiff Bartley Mullen ("Plaintiff") should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Mot. 1, ECF No. 10. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331. Concord's Motion to Dismiss has been fully briefed and is ripe for disposition.

## I.    Factual Background & Procedural History

Plaintiff claims that Concord has engaged in illegal disability discrimination in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189, by failing to provide beds or sleeping surfaces that are readily accessible to and usable by individuals with

1

disabilities, including individuals who use wheelchairs, in Concord's "accessible" rooms at the hotels Concord owns, manages, and/or operates.  Compl. ¶¶ 72-73, ECF No. 1.  In the Complaint, Plaintiff sets forth the following factual allegations relevant to the Court's consideration of Concord's Motion to Dismiss:

Plaintiff is a Pennsylvania resident who is dependent upon a wheelchair for mobility as the result of an illness that necessitated the above-the-knee amputation of his legs.  Compl. ¶¶ 1; 40, ECF No. 1.  Concord owns, manages, and/or operates hotels throughout the United States, and provides, as a part of its operations, hotel rooms that contain beds to its customers.  *Id.* at ¶¶44-45.

The seat height of a standard wheelchair is approximately eighteen to twenty inches from the floor or ground, and the seat height of Plaintiff's wheelchair is approximately eighteen inches from the floor or ground.  Compl. ¶ 2, ECF No. 1.  Plaintiff can safely, easily, and independently transfer from his wheelchair to horizontal surfaces, such as dining chairs, toilet seats, benches, lower passenger vehicle seats, and bed surfaces, that are approximately the same height as Plaintiff's wheelchair seat.  *Id.* at ¶ 49.  It is difficult and dangerous for Plaintiff to transfer from his wheelchair to horizontal surfaces that are significantly higher than his wheelchair seat, as Plaintiff must lift his bodyweight up to the height of a higher surface relying primarily on upper body strength.  *Id.* at ¶ 50.  When transferring to such higher horizontal surfaces, Plaintiff risks injury due to falling or straining his shoulders, and Plaintiff has previously fallen while attempting to transfer from his wheelchair to a hotel bed.  *Id.* at ¶ 51.

When Plaintiff stays at a hotel, he stays in an accessible room that includes special features calculated to accommodate his mobility impairment.  Compl. ¶ 3, ECF No. 1.  Over approximately the last decade, hotel room bed height, measured from the floor to the height of the top of the sleeping surface, has increased from approximately twenty-one inches to approximately twenty-

five to thirty inches, including in otherwise accessible hotel guest rooms.  *Id.* at ¶¶ 4-5.  This increase in hotel room bed height can cause it to be virtually impossible for an individual such as Plaintiff, who relies on a wheelchair for mobility and who has limited use of his arms and legs, to independently transfer from his wheelchair to the hotel room bed surface due to the disparity between the height of a typical wheelchair and the height of the mattress surface.  *Id.* at ¶ 6.  Plaintiff avers that this increase in bed height results in a purportedly accessible hotel room becoming utterly inaccessible to individuals with disabilities.  *Id.* at ¶ 7.

During the timeframe relevant herein, Plaintiff contacted a hotel, specifically the Hyatt House Pittsburgh, that is owned, managed, and/or operated by Concord.  Compl. ¶¶ 46; 53, ECF No. 1.  At that time, Plaintiff was informed by Concord's agent that the Hyatt House Pittsburgh provides accessible rooms for its guests, but that the height of the beds in these "accessible" rooms is approximately twenty-seven inches from the floor.  *Id.* at ¶ 46.  "The sleeping surfaces of the beds in [Concord's] accessible rooms at the Hyatt House Pittsburgh are sufficiently high that they would render it difficult if not impossible for Plaintiff to independently transfer from his wheelchair to the bed."  *Id.* at ¶ 48.  Other hotels under Concord's management and/or operation offer accessible rooms that provide beds that range in height from twenty-five to thirty-one inches from the ground, and that, accordingly, are also not readily accessible to Plaintiff and the proposed class.  *Id.* at ¶ 52.

Plaintiff brings this action on behalf of himself and a proposed class of individuals "who use wheelchairs or scooters for mobility and who have been, or in the future will be, denied the full and equal enjoyment of accessible sleeping surfaces (i.e. beds) at hotels owned, operated and/or controlled by [Concord]."  Compl. ¶ 60, ECF No. 1.  Plaintiff seeks, inter alia, declaratory

relief in the form of a finding that Concord has violated Title III of the ADA, and a permanent

injunction requiring that:

> a) [Concord] offers the required number of accessible rooms with accessible
> sleeping surfaces (i.e. beds) at each of the hotels that it manages and/or operates,
> consistent with the ADA's room dispersal requirements; and
>
> b) [Concord] changes its policies and practices necessary to afford all offered
> goods, services, facilities, privileges, advantages and accommodation to individuals
> with disabilities related to the provision of accessible sleeping surfaces (i.e. beds)
> at each of the hotels that it manages and/or operates.

*Id.* at ¶ 18.

Plaintiff initiated this action by filing the Complaint on October 9, 2020.  Concord filed its

Motion to Dismiss, along with a Brief in Support (ECF No. 11), on November 4, 2020.  Plaintiff

filed a Brief in Opposition (ECF No. 16) on December 4, 2020.  Concord filed its Reply Brief

(ECF No. 17) on December 17, 2020.  On June 7, 2021, Plaintiff filed a Notice of Supplemental

Authority (ECF No. 20) advising the Court that the United States of America had filed a Statement

of Interest (ECF No. 20-1) in the case of *Migyanko v. Aimbridge Hospitality, LLC*, No. 2:20-cv-

01095-NR (W.D. Pa.), a case pending before the Honorable J. Nicholas Ranjan in this District that

involves similar claims and arguments to those that have been raised in the present action.[1]

Concord has not filed a response to Plaintiff's Notice of Supplemental Authority.[2]  Upon review

of the Notice of Supplemental Authority and the attached Statement of Interest, the Court agrees

with Plaintiff that the United States' Statement of Interest directly addresses arguments raised in

---

[1] This Statement of Interest was filed in response to arguments made by the *Migyanko* defendant in support of its motion to dismiss, which remains pending in that case at this time.

[2] The Court notes that the defendant in *Migyanko* filed a response to the United States' Statement of Interest.  While these cases are materially similar, the Court will not impute arguments made in a different action by an entity that is not a party in this case, i.e. the *Migyanko* defendant, to a party, i.e. Concord, in this case, especially where Concord is represented by the same counsel and chose not to file anything on the docket in this case in response to the Notice of Supplemental Authority.  That said, the Court has reviewed the *Migyanko* defendant's response to the Statement of Interest, and notes that the Court is familiar with the authorities cited therein, and that the arguments raised in the *Migyanko* defendant's response are entirely consistent with the arguments that have been raised in this action.

*Migyanko* that are materially identical to arguments that have been raised by Concord in this case. In light of the same, the Court acknowledges the filing of the United States' Statement of Interest in *Migyanko*, and will consider the arguments set forth and case law cited therein in resolving the issues presently before the Court, especially in the absence of any stated objection by Concord.

## II.    Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it

"stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.    Discussion

Concord's Motion to Dismiss presents a single legal issue that is appropriate for resolution at this stage of the proceedings: whether Plaintiff's failure to allege a violation of the ADA Standards for Accessible Design ("ADA Standards") necessarily establishes that he cannot state a

claim under Title III of the ADA against Concord related to Concord's hotel rooms.  Both Plaintiff and the United States argue that a court's analysis does not end with the ADA Standards where the ADA Standards fail to address a specific issue, and further assert that, in cases such as this, a court must also look to whether Plaintiff has stated a claim under the general nondiscrimination requirements of Title III of the ADA.  *See* Statement of Interest 5, ECF No. 20-1 (United States arguing that, "because the ADA Standards do not address hotel bed height, the next step in the analysis is to look to the ADA's general nondiscrimination requirements, including the obligation to make reasonable modifications.").

The ADA sets forth, as a general rule, that: "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  The ADA prohibits public accommodations from denying individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity, 42 U.S.C. § 12182(b)(1)(A)(i), and further prohibits public accommodations from providing individuals with disabilities with goods, services, facilities, privileges, advantages, or accommodations that are not equal to, or that are different or separate from, those provided to other individuals, 42 U.S.C. §§ 12182(b)(1)(A)(ii)-(iii).  Discrimination also includes a failure to make "reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"  42 U.S.C. § 12182 (b)(2)(A)(ii).

In describing the purpose of the ADA, the United States Court of Appeals for the First Circuit has explained:

> The purpose of the ADA is to "invoke the sweep of Congressional authority . . . in order to address the major areas of discrimination faced day-to-day by people with disabilities," 42 U.S.C. § 12101(b). The ADA was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The purpose of Title III of the ADA, is "to bring individuals with disabilities into the economic and social mainstream of American life . . . in a clear, balanced, and reasonable manner." H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 99 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 382. In drafting Title III, Congress intended that people with disabilities have equal access to the array of goods and services offered by private establishments and made available to those who do not have disabilities. S.Rep. No. 116, 101st Cong., 1st Sess. at 58 (1989).

*Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994). To state a claim under Title III of the ADA, a plaintiff must allege: "(1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 542–43 (W.D. Pa. 2013) (quoting *Harty v. Burlington Coat Factory of Pa., L.L.C.*, No. 11–01923, 2011 WL 2415169, at *9 (E.D. Pa. June 16, 2011)).

Congress charged the Attorney General with implementing Title III of the ADA by promulgating regulations, issuing technical assistance, and bringing suits in federal court to enforce the statute. 42 U.S.C. § 12186(b)-(c); Statement of Interest 1, ECF No. 20-1. With respect to the ADA Standards, the United States' Statement of Interest explains:

> The ADA regulations on physical accessibility standards detail how places of public accommodation are "to be designed, constructed, and altered in compliance with the accessibility standards" set out in the regulations. 28 C.F.R. § 36.101(a). Issued with the Title III regulation, the ADA Standards set out the relevant standards for ADA compliance as to the physical accessibility of certain architectural elements. *See* 42 U.S.C. §§ 12183, 12186; 28 C.F.R. §§ 36.102; 36.304(d), and Subpart D. The ADA Standards must be consistent with the

minimum guidelines and requirements of the Architectural and Transportation Barriers Compliance Board, now known as the Access Board.   42 U.S.C. §§ 12186(b)-(c).   The ADA Standards include both the 1991 Standards and 2010 Standards.

Statement of Interest 4, ECF No. 20-1 (footnote omitted).

Initially, the parties and the United States agree that the ADA Standards themselves do not

set forth a bed height requirement for hotel guest rooms.  Section 806 of the ADA Standards, titled

"Transient Lodging Guest Rooms," sets forth the following requirements with respect to hotel

rooms:

806.1 General.  Transient lodging guest rooms shall comply with 806.  Guest rooms required to provide mobility features shall comply with 806.2.  Guest rooms required to provide communication features shall comply with 806.3.

806.2 Guest Rooms with Mobility Features.  Guest rooms required to provide mobility features shall comply with 806.2.

806.2.1 Living and Dining Areas.  Living and dining areas shall be accessible.

806.2.2 Exterior Spaces.  Exterior spaces, including patios, terraces and balconies, that serve the guest room shall be accessible.

806.2.3 Sleeping Areas.  At least one sleeping area shall provide a clear floor space complying with 305 on both sides of a bed.  The clear floor space shall be positioned for parallel approach to the side of the bed.

Exception: Where a single clear floor space complying with 305 positioned for parallel approach is provided between two beds, a clear floor or ground space shall not be required on both sides of a bed.

806.2.4 Toilet and Bathing Facilities.  At least one bathroom that is provided as part of a guest room shall comply with 603.  No fewer than one water closet, one lavatory, and one bathtub or shower shall comply with applicable requirements of 603 through 610.  In addition, required roll-in shower compartments shall comply with 608.2.2 or 608.2.3.  Toilet and bathing fixtures required to comply with 603 through 610 shall be permitted to be located in more than one toilet or bathing area, provided that travel between fixtures does not require travel between other parts of the guest room.

806.2.4.1 Vanity Counter Top Space.  If vanity counter top space is provided in non-accessible guest toilet or bathing rooms, comparable vanity counter top space,

in terms of size and proximity to the lavatory, shall also be provided in accessible guest toilet or bathing rooms.

806.2.5 Kitchens and Kitchenettes.  Kitchens and kitchenettes shall comply with 804.

806.2.6 Turning Space.  Turning space complying with 304 shall be provided within the guest room.

806.3 Guest Rooms with Communication Features.  Guest rooms required to provide communication features shall comply with 806.3.

806.3.1 Alarms.  Where emergency warning systems are provided, alarms complying with 702 shall be provided.

806.3.2 Notification Devices.  Visible notification devices shall be provided to alert room occupants of incoming telephone calls and a door knock or bell.  Notification devices shall not be connected to visible alarm signal appliances.  Telephones shall have volume controls compatible with the telephone system and shall comply with 704.3.  Telephones shall be served by an electrical outlet complying with 309 located within 48 inches (1220 mm) of the telephone to facilitate the use of a TTY.

36 C.F.R. Pt. 1191, App. D, § 806.  Section 806's only discussion of beds or sleeping areas

provides:

806.2.3 Sleeping Areas.  At least one sleeping area shall provide a clear floor space complying with 305 on both sides of a bed.  The clear floor space shall be positioned for parallel approach to the side of the bed.

Exception: Where a single clear floor space complying with 305 positioned for parallel approach is provided between two beds, a clear floor or ground space shall not be required on both sides of a bed.

36 C.F.R. Pt. 1191, App. D, § 806.2.3.  The ADA Standards clearly provide no requirement with

respect to hotel bed height specifically, and, outside of the floor space surrounding a hotel bed, do

not provide any requirement with respect to hotel beds/sleeping surfaces generally.[3]

---

[3] The Court notes that an Appendix published with the 2010 ADA Standards did discuss hotel bed height as follows:

Additionally, many commenters urged the Department to regulate the height of beds in accessible hotel guest rooms and to ensure that such beds have clearance at the floor to accommodate a mechanical lift.  These commenters noted that in recent years, hotel beds have become higher as

Concord asserts that, because the ADA Standards provide certain accessibility requirements for hotel rooms, and because Plaintiff fails to allege a violation of these requirements, Plaintiff fails to state a claim under the ADA.  Generally speaking, the Court's review of the case law cited and arguments set forth by the parties and the United States in their briefing tends to confirm that, where the ADA Standards specifically set forth a design requirement for physical accessibility, compliance with that specific provision of the ADA Standards establishes compliance with the ADA as to the design element discussed in that provision.[4]  Plaintiff argues, however, that, because the ADA Standards do not set forth any requirements for sleeping surfaces or bed height, the Court must look to Title III's general nondiscrimination requirements, including the requirement to make reasonable modifications, in determining whether Plaintiff has stated a claim in this action.  *See* Compl. ¶¶ 17; 34, ECF No. 1; Br. in Opp'n 7 n.3, ECF No. 16; *see also* Statement of Interest 5-6, ECF No. 20-1.

---

> hotels use thicker mattresses, thereby making it difficult or impossible for many individuals who use wheelchairs to transfer onto hotel beds.  In addition, many hotel beds use a solid-sided platform base with no clearance at the floor, which prevents the use of a portable lift to transfer an individual onto the bed.  Consequently, individuals who bring their own lift to transfer onto the bed cannot independently get themselves onto the bed.  Some commenters suggested various design options that might avoid these situations.
>
> The Department intends to provide specific guidance relating to both hotel beds and aquatic wheelchairs in a future rulemaking.  For the present, the Department reminds covered entities that they have the obligation to undertake reasonable modifications to their current policies and procedures and to undertake barrier removal or provide alternatives to barrier removal to make their facilities accessible to persons with disabilities.  In many cases, providing aquatic wheelchairs or adjusting hotel bed heights may be necessary to comply with those requirements.

28 C.F.R. pt. 36, App. A, at 884 (2020).  The Court notes that the possibility that the Department of Justice may, at some unspecified time, eventually promulgate requirements for hotel beds does not constitute a reason for delay in consideration of Plaintiff's claim in this matter.  *See Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539, 548–49 (E.D.N.Y. 2018) ("Although the Court understands the Defendant's desire to wait until more definitive guidance from the DOJ exists, the Court must also consider the Plaintiff's right to a prompt adjudication of her claim.  Therefore, the Court will not delay the resolution [of] this matter until the DOJ decides to take up the issue again.").

[4] By way of example, the United States provides: "[I]f an accessible hotel room contains a bathroom with grab bars that are between 33 and 36 inches high, where required by the ADA Standards, the hotel has met its ADA obligation as to that element.  *See* 36 C.F.R. Pt. 1191, App. D, §§ 607.4, 609.4.  Individuals with disabilities could not premise an ADA claim on an allegation that they need grab bars that are 30 inches high instead."  Statement of Interest 5 n.3, ECF No. 20-1.

Initially, it is clear, and seemingly undisputed, that Plaintiff has sufficiently alleged the following: (1) Plaintiff is an individual with a disability; (2) Concord is an entity that operates places of public accommodation, specifically hotels; and (3) Plaintiff and similarly situated individuals with disabilities are unable to utilize the beds/sleeping surfaces provided by Concord because the sleeping surfaces of the beds contained within Concord's "accessible" rooms are of such a height that it is virtually impossible for individuals with disabilities who utilize wheelchairs for mobility to safely transfer from their wheelchair to the hotel bed surface. The only issue presented by Concord's Motion to Dismiss is whether Concord's failure to provide usable beds to individuals with disabilities can constitute discrimination under the ADA where the ADA Standards set forth certain requirements for hotel rooms, but do not address bed height.

In the absence of any mention of hotel rooms in the ADA Standards, it is clear that Plaintiff's Complaint would survive at this stage of the proceedings under the general nondiscrimination requirements of the ADA and the ADA's overarching equal access mandate. Plaintiff alleges that Concord's purportedly accessible hotel rooms deny individuals with disabilities equal access to and the use of one of the, if not the, most basic and fundamental goods, services, facilities, privileges, advantages, or accommodations provided by a hotel guest room, an accessible bed/sleeping surface upon which an individual can sleep. Concord argues that, even if Plaintiff's allegations are true, only the Department of Justice can remedy this situation by promulgating updated ADA Standards that incorporate a bed height requirement.[5] Br. in Supp. 7-9, ECF No. 11. As noted above, Concord asserts that Plaintiff's failure to allege a violation of the ADA Standards for hotel rooms necessarily establishes the absence of an ADA violation with

---

[5] Concord's interpretation of the ADA and the ADA Standards, taken to its logical extreme, would seemingly permit Concord, without violating the ADA, to provide "accessible" hotel rooms that exclusively contain beds that are of such a height that they are entirely unusable by individuals with disabilities, unless and until new ADA Standards are promulgated. Such a result would seemingly fly in the face of the ADA's well-recognized purpose.

12

respect to Concord's accessible hotel room sleeping surfaces/beds, which Concord asserts constitute a design element of a hotel room.

"A public accommodation that 'complies with [the ADA Standards]' is deemed 'accessible.'" *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1220 (10th Cir. 2014) (citing 1991 Standard 3.5).[6]  As previously noted, Concord asserts that, in this case, "Plaintiff has challenged a design element controlled by the [ADA Standards]."  Reply 4, ECF No. 17 (emphasis omitted).  As acknowledged by the parties and the United States, however, the ADA Standards do not address the height of beds in hotel rooms and, outside of the floor space around beds, do not address hotel room beds whatsoever.  This is not a situation where the Court is tasked with interpreting a specific provision of the ADA Standards to determine whether Concord's beds and sleeping surfaces comply with specific accessibility requirements set forth therein.  In that way, this case is readily distinguishable from *Colorado Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205 (10th Cir. 2014), *Lara v. Cinemark USA, Inc.*, 207 F.3d 783 (5th Cir. 2000), and *U.S. v. Nat'l Amusements, Inc.*, 180 F. Supp.2d 251 (D. Mass. 2001).  Each of those cases involved interpretation of a requirement set forth in the ADA Standards that addressed the specific design elements at issue in those cases, specifically accessible seating in assembly areas in *Lara* and *National Amusements* and accessible entrances in *Colorado Cross-*

---

[6] The *Colorado Cross-Disability Coalition* court also explained that:

> The commentary provides that:
>
> > A private entity that renders an "accessible" building inaccessible in its *operation, through policies or practices*, may be in violation of [42 U.S.C. § 12182].  For example, a private entity can render an entrance to a facility inaccessible by keeping an accessible entrance open only during certain hours (whereas the facility is available to others for a greater length of time).  A facility could similarly be rendered inaccessible if a person with disabilities is significantly limited in her or his choice of a range of accommodations.

*Colorado Cross-Disability Coal.*, 765 F.3d at 1220 (quoting 28 C.F.R. pt. 36, app. C, at 914 (guidance to 28 C.F.R. § 36.401)).

*Disability Coalition*, and the courts in those cases thus did not look to the ADA's general nondiscrimination requirements. Again, and importantly, this is not a case where the Court can look to the ADA Standards to determine whether Concord has provided an accessible or usable bed/sleeping surface in its purportedly accessible hotel rooms, as the ADA Standards contain no requirement as to this aspect of hotel rooms whatsoever.

The Court further notes that some of the cases relied upon by Concord are readily distinguishable and irrelevant in this matter for the reasons discussed in the United States' Statement of Interest. *See* Statement of Interest 9, ECF No. 20-1 ("Rather, they stand for the straightforward proposition that a plaintiff cannot use alleged violations of state law, and more specifically state building codes, to establish an ADA violation where the ADA Standards already address the alleged barrier.").

In the present case, Plaintiff alleges that Concord maintains a policy and practice of providing purportedly accessible hotel rooms at the hotels it operates that exclusively contain beds whose sleeping surface height renders the beds inaccessible to and unusable by individuals with disabilities, such as Plaintiff, who use wheelchairs or scooters for mobility. Compl. ¶¶ 17; 55, ECF No. 1. Concord offers no true argument at this juncture that it provides beds/sleeping surfaces in its accessible hotel rooms that are accessible to or usable by Plaintiff or similarly situated individuals, but rather argues that it is not required to provide a usable bed in its purportedly accessible hotel rooms because it has complied with the ADA Standards for hotel rooms.[7] Plaintiff seeks relief in the form of a modification of Concord's policy and practice of providing

---

[7] The Court notes the same only for the purpose of illustrating the extraordinary breadth of Concord's argument at this juncture, as Concord seemingly argues that it has carte blanche to provide beds of whatever height it chooses in its purportedly accessible hotel rooms, regardless of whether such a practice denies its guests with disabilities the benefit of a bed/sleeping surface. The Court acknowledges that it would be inappropriate for Concord to assert the argument that it, in fact, does provide accessible beds/sleeping surfaces in its accessible hotel rooms, at this stage of the proceedings, and recognizes that Concord has not waived the opportunity to assert the argument at a later date.

inaccessible beds in its purportedly accessible hotel rooms.  *Id.* at ¶ 18.  In this case, Plaintiff has alleged that Concord maintains a policy and practice of providing its guests with purportedly accessible hotel rooms that, while perhaps compliant with the existing ADA Standards, deny individuals with certain disabilities a usable bed.  The Court finds that, in this manner, Plaintiff's claim is materially similar to the "operational use" claim discussed in the case of *Kalani v. Starbucks Corp.*, 117 F. Supp. 3d 1078 (N.D. Cal. 2015).

In *Kalani*, a plaintiff who utilized a wheelchair for mobility asserted that, while the defendant's wheelchair accessible tables may have technically complied with the applicable requirements of the ADA Standards, the defendant's use and arrangement of those tables violated the ADA's more general requirements because it necessarily resulted in any customer who utilized a wheelchair being required to sit facing a wall, with their back to the defendant's store interior, when visiting the defendant's store.  The United States District Court for the Northern District of California explained in *Kalani* that "mere compliance with applicable ADAAG regulations does not preclude the possibility that a place of public accommodation may deny an individual the 'full and equal enjoyment' of the goods or services the public accommodation provides."[8]  *Kalani v. Starbucks Corp.*, 117 F. Supp. 3d 1078, 1085 (N.D. Cal. 2015), *aff'd in relevant part, vacated in part*, *Kalani v. Starbucks Coffee Co.*, 698 F. App'x 883 (9th Cir. 2017).  With respect to whether a plaintiff must assert a violation of the ADA Standards to state a claim under the ADA, the *Kalani* court explained:

> In the instant case, like the cases discussed above, Plaintiff does not challenge Defendant's compliance with ADAAG governed elements of a building's design, but instead challenges Defendant's prevention of the plaintiff's "full and equal enjoyment," 42 U.S.C. § 12182(a), of the goods and services that Defendant offers.

---

[8] The Court notes that the *Kalani* court's references to the "ADAAG" are functionally equivalent to this Court's references to the "ADA Standards."  *See Kohler v. In-N-Out Burgers*, No. CV 12-5054-GHK JEMX, 2013 WL 5315443, at *1 n.1 (C.D. Cal. Sept. 12, 2013) "(It is the 'Standards,' codified at 28 C.F.R. Part 36, that constitute the legally binding regulation.  Nevertheless, the term ADAAG is often used.").

> See *Fortyune*, 364 F.3d at 1085; [*Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012)]. Although Plaintiff's claim involves a regulated design element in so far as the ADAAG prescribes certain height and width requirements for accessible tables, Plaintiff's claim is not about the design of the accessible tables, but rather Defendant's operational use of those tables. Like the plaintiffs in *Baughman* and *Fortyune*, Plaintiff claims that Defendants' use, policy, and practice with respect to its interior accessible tables prevent Plaintiff from having "full and equal enjoyment," 42 U.S.C. § 12182(a), of Defendant's goods and services by depriving Plaintiff of an "experience comparable to that of able-bodied patrons," *Baughman*, 685 F.3d at 1135; *see* Trial Tr. at 78:24–79:4.
>
> Accordingly, the Court finds that Plaintiff does not need to show a violation of the ADAAG to state a claim under the ADA. *See Fortyune*, 364 F.3d at 1085; *Baughman*, 685 F.3d at 1135. Instead, Plaintiff may state claims under the antidiscrimination provisions of Title III of the ADA. *See* [*Celano v. Marriott Int'l, Inc.*, No. C 05-4004 PJH, 2008 WL 239306, at *14 (N.D. Cal. Jan. 28, 2008)].

*Kalani*, F. Supp. 3d at 1086–87. The *Kalani* court further held that the defendant, "through the orientation and positioning of its interior accessible tables, has afforded Plaintiff an opportunity to both participate in and benefit from the abovementioned goods and services that was 'not equal to that afforded to other individuals[,]'" and that the same "constitutes discrimination under Title III of the ADA." *Id.* at 1088 (quoting 42 U.S.C. § 12182(b)(1)(A)(ii)).

The *Kalani* court is not alone in holding that a plaintiff may state a claim under Title III in the absence of an asserted violation of the ADA Standards. *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1085 (9th Cir. 2004) ("But in cases such as Fortyune's, which concern a public accommodation's policy regarding the use of that design (e.g., the use and availability of a companion seat), the provisions of the ADAAG are not controlling."); *see also id.* at 1085 n.4 (explaining: "This is not to say that the ADAAG is irrelevant. Policies effectuating the ADAAG may be required to fulfill the statutory purpose of 42 U.S.C. § 12182. For instance, the ADAAG requires that hotels provide a minimum number of accessible rooms and rooms with roll-in showers. *See* 28 U.S.C. Pt. 36, App. A, Guideline 9.1.2. The regulation implementing 42 U.S.C. § 12182(b)(2)(A)(ii), illustrates that a hotel does not fulfill its obligations under the ADA simply

by complying with this design and construction guideline.  In addition, 'a hotel may need to adopt a policy of keeping an accessible room unoccupied until an individual with a disability arrives at the hotel . . . .'  28 C.F.R. Pt. 26, App. B, § 36.302.");  *Celano v. Marriott Int'l, Inc.*, No. C 05-4004 PJH, 2008 WL 239306, at *14 (N.D. Cal. Jan. 28, 2008) (in a case where a defendant maintained a policy at its golf courses of providing golf carts to golfers but argued that it was not required by the then-current ADA Standards to maintain and provide accessible golf carts to golfers with disabilities, the United States District Court for the Northern District of California held: "Marriott's current policy does not provide plaintiffs, mobility-impaired golfers, with an experience that is functionally equivalent to that of other non-disabled golfers.  Plaintiffs here have presented overwhelming evidence that they are unable to golf at Marriott's courses under the current policy.  By contrast, non-disabled golfers can simply show up at the course and Marriott will provide them with a functional cart as part of the cost of their round of golf.  Accordingly, Marriott provides golf carts for able-bodied golfers, but does not provide accessible carts for mobility-impaired golfers like plaintiffs.  Because Marriott's policy places plaintiffs in a distinctly unequal situation, as compared to their able-bodied counterparts, it is discriminatory under the ADA.");  *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012) ("Public accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience.");  *Thomas v. Kohl's Corp.*, No. 17 C 5857, 2018 WL 704691, at *3 (N.D. Ill. Feb. 5, 2018) (rejecting a defendant's argument that "because there is no express spacing requirement for moveable display racks under the ADA, [plaintiff] cannot state a Title III claim as a matter of law.").

Plaintiff alleges that Concord, as an operator of hotels, offers, provides, and "uses" both its non-accessible hotel rooms and its accessible hotel rooms, as well as the beds/sleeping surfaces

contained therein, to provide its guests with a sleeping surface (i.e. a bed) upon which the guest can sleep when they stay at a Concord hotel.  Compl. ¶ 45, ECF No. 1.  In this action, Plaintiff does not assert that Concord failed to comply with the applicable ADA Standards when it designed its accessible hotel rooms.  Plaintiff has alleged, however, that Concord's alleged policy and practice of exclusively placing only inaccessible and unusable beds inside of its purportedly accessible hotel rooms denies individuals with disabilities, and specifically those who utilize wheelchairs and scooters for mobility, the use and availability of an accessible sleeping surface/bed for sleeping, i.e. a good, service, facility, privilege, advantage, or accommodation that Concord provides as a hotel operator to other individuals.   In summary, Plaintiff has alleged that Concord maintains a policy and practice that denies individuals with disabilities equal access to Concord's goods, services, facilities, privileges, advantages, or accommodations.

"[I]f an entity constructs an 'accessible' facility, but takes affirmative steps to bar disabled persons from enjoying it, then it has violated the ADA's prohibition of providing a separate benefit 'on the basis of a disability.'"   *Colorado Cross-Disability Coal.*, 765 F.3d at 1220 (citing 42 U.S.C. § 12182(b)(1)(A)(iii)).  That is precisely what Plaintiff has alleged in this case.  Plaintiff alleges that Concord's relatively recent policy and practice of offering only inaccessible and unusable beds in Concord's purportedly accessible hotel rooms has barred Plaintiff and similarly situated individuals with disabilities from being able to enjoy one of the most basic services or accommodations offered by a hotel room operator, a bed upon which an individual can sleep.  In light of the Court's analysis above, the Court finds that Plaintiff's Complaint sufficiently alleges disability discrimination under 42 U.S.C. §§ 12182(b)(1)(A)(i)-(iii) and 42 U.S.C. § 12182 (b)(2)(A)(ii), and further finds that the Complaint states a claim under the general nondiscrimination requirements of Title III of the ADA.

Though distinguishable, the Court also finds instructive the case of *Reed v. 1-800-Flowers.com, Inc.*, wherein the United States District Court for the Eastern District of New York addressed a situation where the ADA Standards set forth no specific requirements for website or mobile application accessibility whatsoever. The *Reed* court explained: "[T]he statutory mandate of Title III provides the Defendant ample notice of its duty not to discriminate. DOJ regulations may amplify or augment the ADA's general mandate. The absence of those regulations does not displace the affirmative obligation created by the statute." *Reed*, 327 F. Supp. 3d at 549. The Court again notes that, in this case, it is abundantly clear and undisputed that, while the ADA Standards set forth certain design requirements for hotel rooms, they do not address, in any relevant manner, bed height specifically or even sleeping surfaces generally. This lack of a specific requirement for hotel room bed height might mean that Concord's compliance with the ADA could be achieved in a more flexible manner than where the ADA Standards provide for a strict, specific requirement. [9] In this Court's estimation, it does not establish, as Concord would have this Court

---

[9] In its Statement of Interest, the United States explained:

> Of course, in the absence of specific requirements for bed height, hotels have some degree of flexibility in making reasonable modifications to provide usable beds for a person with a disability. This flexible standard is inherently fact-specific. For example, some hotels might be able to use a combination of lower profile mattresses, box springs, and bed frames to lower the beds permanently in some of their rooms. Or, some hotels could perhaps provide lower beds upon request in a room by using rollaway beds, removable bed frames, adjustable height bed frames, or bed frames on removable risers. Such flexibility could allow hotels to continue to use higher beds for guests that prefer them, if they so choose.

Statement of Interest 10, ECF No. 20-1; *see also Reed v. CVS Pharmacy, Inc.*, No. CV 17-3877-MWF (SKX), 2017 WL 4457508, at *5 (C.D. Cal. Oct. 3, 2017) ("CVS' contention amounts to a request to refrain from enforcing business' obligations under the ADA until the DOJ promulgates what it deems to be specific enough guidelines, a requirement that would eviscerate the ADA. The DOJ's position that the ADA applies to websites being clear, it is no matter that the ADA and the DOJ fail to describe exactly how any given website must be made accessible to people with visual impairments. Indeed, this is often the case with the ADA's requirements, because the ADA and its implementing regulations are intended to give public accommodations maximum flexibility in meeting the statute's requirements. This flexibility is a feature, not a bug, and certainly not a violation of due process. However, it was demonstrably clear to CVS that if it chose to offer a website or mobile app in connection with its brick-and-mortar stores, those services were required to be accessible to people with disabilities, unless the requested auxiliary aids and services were too burdensome to implement.")

find, that Concord can effectively refuse to provide its services altogether to individuals with disabilities such as Plaintiff who, due to their disabilities, allegedly cannot use the beds in Concord's hotel rooms.  *See Reed*, 327 F. Supp. 3d at 549. ("The lack of specific regulations [does] not excuse non-compliance with the ADA."); *see also Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 908 (9th Cir. 2019) ("While we understand why Domino's *wants* DOJ to issue specific guidelines for website and app accessibility, the Constitution only requires that Domino's receive fair notice of its legal duties, not a blueprint for compliance with its statutory obligations.").

The Court also notes that it has not been tasked, especially at this juncture, with determining what, if any, form of injunctive relief may be appropriate should Plaintiff prove successful in this action.  Concord advances no argument as to this issue at this stage of the proceedings, and any such argument would, in any event, be premature.[10]

The Court finally notes that it is not opining on whether Plaintiff will likely prevail on the merits of his claim, or whether he may prove successful or unsuccessful in eventually moving to certify a class in this matter.  Rather, Concord's Motion to Dismiss has tasked this Court with determining whether the factual allegations in the Complaint, accepted as true, are sufficient to state a claim against Concord for a violation of Title III of the ADA.  "The ADA requires public accommodations to take reasonable steps to provide an experience comparable to that afforded to

---

[10] *See Reed*, 327 F. Supp. 3d at 551 ("Lastly, the Court separately notes that the Defendant's concerns about the accessibility standard to-be applied are premature.  The Court need only consider the appropriate remedy in the event that the Plaintiff establishes that a violation of Title III occurred.  If the Plaintiff prevails, the Defendant will have ample opportunity to be heard about the appropriateness of any remedy."); *see also Access Now, Inc. v. Blue Apron, LLC*, No. 17-CV-116-JL, 2017 WL 5186354, at *6 (D.N.H. Nov. 8, 2017) ("Whether a modification is 'reasonable,' too burdensome, or a fundamental alteration to the nature of the service or accommodation 'will vary depending on a plaintiff's disability and a defendant's goods, services, accommodations, and resources—a modification that works for a certain plaintiff may not work for all plaintiffs and may not be a reasonable request to make of every defendant.' *Andrews v. Blick Art Materials, LLC*, No. 17–CV–767, 2017 WL 3278898, at *18 (E.D.N.Y. Aug. 1, 2017).  Whether the particular accommodations requested by the plaintiffs to permit their equal enjoyment of Blue Apron's website fall into these categories is a fact-dependent question better addressed with a developed factual record not present at this stage of the proceedings.").

non-disabled patrons." *Kalani v. Starbucks Coffee Co.*, 698 F. App'x 883, 886–87 (9th Cir. 2017). The Court finds that Plaintiff has very clearly set forth a cause of action under the general nondiscrimination requirements of the ADA, and Concord does not truly advance any argument to the contrary.  The only argument raised by Concord in its Motion to Dismiss is that Plaintiff's failure to allege a violation of the ADA Standards necessarily establishes that Plaintiff cannot set forth a claim for a violation of the ADA with respect to Concord's hotel rooms.  As discussed above, the Court disagrees with Concord's contention, and will deny Concord's Motion to Dismiss.

## IV.     Conclusion

For the reasons discussed above, the Court will deny Concord's Motion to Dismiss.  An appropriate Order of Court follows.

BY THE COURT:


s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: February 1, 2022

cc: All counsel of record